UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Devin Richardson,

      Plaintiff,

      v.                          Civil Action No. 2:16-cv-55-cr-jmc

City of Rutland,
City of Rutland Police Department,
and Police Officer Justin D. Souza,

      Defendants.

## REPORT AND RECOMMENDATION
(Doc. 9)

Plaintiff Devin Richardson, an inmate presently in the custody of the Federal Bureau of Prisons and proceeding *pro se*, brings this action under 42 U.S.C. § 1983, alleging that a Rutland Police Officer, the City of Rutland Police Department (RPD), and the City of Rutland violated his rights under the Fourth and Fourteenth Amendments by "subjecting [him] . . . to a strip search without reasonable cause."[1] (Doc. 4 at 4, ¶ 1.) Richardson claims that the allegedly unlawful search was the product of de facto policies and practices of the City of Rutland and the RPD, which resulted in a "fail[ure] to

---

[1] The court assumes that Richardson is making a claim under the Fourteenth Amendment insofar as it binds the states under the Fourth Amendment. *See, e.g.*, *Youngs v. Fusaro*, 179 F. Supp. 3d 198, 204 (D. Conn. 2016) ("The search and seizure provisions of the Fourth Amendment are incorporated against the states through the Fourteenth Amendment."); *see also Mapp v. Ohio*, 367 U.S. 643, 655 (1961). Richardson has not alleged any violations of his due process rights.

properly train, screen, supervise, or discipline employees and police officers." (*Id.* at 5, ¶ 2.) For relief, Richardson seeks compensatory and punitive damages, and reasonable costs and disbursements in the amount of $500,000. (*Id.* at 5.)

Richardson filed his Complaint on March 2, 2016. (Doc. 4.) Now pending is Defendants' Motion for Summary Judgment, filed on August 15, 2016. (Doc. 9.) Therein, Defendants make the following arguments: (1) the initial search of Richardson was not a strip search; and (2) even if the search did constitute a strip search, it was justified by the officer's reasonable suspicion and thus did not violate Richardson's constitutional rights.[2] (*Id.* at 5.) As required by Local Rule 56, Defendants submitted a Statement of Undisputed Material Facts (Doc. 9-1), and notified Richardson about the consequences of failing to respond to the Motion (Doc. 9-3). *See* L.R. 56(a), (e). Although Richardson responded to the Motion with his own Affidavit (Doc. 11), he did not submit a Statement of Disputed Material Facts as required by Local Rule 56(b).[3] Thus, the facts in this case appear to be largely undisputed.

For the reasons set forth below, I recommend that the court GRANT Defendants' Motion for Summary Judgment (Doc. 9) and DISMISS Richardson's Complaint (Doc. 4).

---

[2] Defendants also argue that a second search of Richardson was a valid strip search, conducted pursuant to a warrant issued under a finding of probable cause. (Doc. 9 at 6.) Richardson, however, does not appear to challenge the constitutionality of the second search. (*See* Doc. 4 at 4–5.)

[3] It is also worth noting that the parties have failed to confer and file a joint discovery schedule as required by Local Rule 26(a)(1). This discovery schedule should have been filed by June 6, 2016. *See* L.R. 26(a)(2) ("[T]he Discovery Schedule is due within 45 days after filing the answer . . . ."); Fed. R. Civ. P. 6(a). Notwithstanding these failures, as well as the lack of discovery in this case, I determine that summary judgment is appropriate for the reasons discussed below. Moreover, Richardson himself apparently waives his right to engage in discovery as he stated in his Affidavit, "Plaintiff is ready for a jury to determ[ine] the facts of this case. Plaintiff is ready for trial." (Doc. 11 at 4, ¶ 13.)

**Background**

The parties generally do not contest the material facts in this matter. The background that follows, predominantly drawn from the Rule 56 statement (Doc. 9-1) filed by Defendants, and Richardson's Complaint (Doc. 4), is undisputed unless otherwise indicated.

On April 11, 2013, a special task force of the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) executed a search and seizure warrant as part of a drug investigation at a Rutland residence. (Doc. 9-1 at 1, ¶ 1; Doc. 4 at 2, ¶ 1.) Richardson was not initially targeted in the investigation underlying the warrant, but "as a result of this search warrant and other information, [he] was taken to the [RPD] for investigative purposes." (Doc. 4 at 2, ¶ 1.) At the police station, officers questioned Richardson, who provided a false name. (Doc. 9 at 2–3.) Officers determined that Richardson had "obtained a false Vermont I.D." and subsequently charged him with "providing false information to law enforcement authorities"—a misdemeanor offense. (*Id.* at 2–3 (citing Vt. Stat. Ann. tit. 13, § 1754(a) ("A person who knowingly gives false information to any law enforcement officer with purpose . . . to deflect an investigation from the person . . . shall be imprisoned for not more than one year or fined not more than $1,000.00, or both.")); Doc 4 at 2, ¶ 2.) Officers then took Richardson's fingerprints and photographed him, in an effort to identify him. (Doc. 4 at 2, ¶ 3; Doc. 9-1 at 1, ¶ 2.) These records were sent to the Federal Bureau of Investigation (FBI) Special Processing Center and Richardson "was placed in an empty holding cell[] to await confirmation of his identify from [the] FBI." (Doc. 4 at 2, ¶ 3; *see also* Doc. 9-1 at 2, ¶ 4.)

3

RPD Officer Justin Souza and Special Agent Adam Ekstrom of the ATF entered the holding cell and told Richardson to undress. (Doc. 4 at 2–3, ¶ 4.) Defendants note that "[f]or safety reasons at RPD[,] the police must conduct a 'thorough' search of detainees[,] including all items of clothing where weapons or contraband may be hidden." (Doc. 9-1 at 2, ¶ 5 (citing Doc. 9-8 at ¶ III(C)(1)(d)).) Defendants state that "[p]ursuant to Department policy, Officer Souza conducted a pat down search" of Richardson. (*Id.* ¶ 6.) Souza observed that Richardson was wearing multiple layers of clothing and asked Richardson to remove his top shirt (*id.* ¶ 7), at which point Souza noticed that Richardson was "wearing two boxer shorts like pajama pants" (*id.* ¶ 8). Defendants indicate that "[b]ased on his training and experience, Officer Souza knew that multiple layers of clothing could provide an opportunity for hiding contraband." (*Id.* ¶ 7.) Richardson alleges that once he was undressed "down to his underwear, [Officer] Souza grabbed [his] groin area." (Doc. 4 at 3, ¶ 4.) Defendants note that as Souza performed a pat down of Richardson's underwear, "he felt an object." (Doc. 9-1 at 2, ¶ 9.) Richardson then began to resist the officers and was restrained. (*Id.*; Doc. 4 at 3, ¶ 4.) After the struggle, Richardson turned over a bag of pills from his person on his own accord. (*Id.*) Souza "believed a larger bag of drugs was hidden in plaintiff's underwear," and obtained a search warrant. (Doc. 9-1 at 3, ¶¶ 10–11.) Souza conducted a strip search pursuant to this warrant, which did not reveal any contraband. (*Id.* ¶ 11; Doc. 4 at 3, ¶ 5.)

The FBI then informed the RPD that a parole revocation warrant was outstanding against Richardson in the state of New York. (Doc. 4 at 3, ¶ 6.) Richardson was subsequently charged with the felony offense of being a fugitive from justice and was

placed into custody at Marble Valley Correctional Center until he could be returned to New York pursuant to the warrant. (*Id.* at 3, ¶¶ 7, 8.) The misdemeanor charge of false reports to the police was later dismissed. (*Id.* ¶ 7.) Richardson states that he "was never charged for any contraband discovered during the first strip search," (*id.*) but this claim is contradicted by the records of this court. Pursuant to Federal Rule of Evidence 201, judicial notice is taken of the fact that Richardson was convicted by way of a guilty plea in this court on August 25, 2015 to a charge of conspiracy to distribute oxycodone and heroin, as set forth in Count 1 of a Superseding Indictment. *United States v. Richardson*, D. Vt. 5:14-cr-45, ECF No. 16. The conspiracy to which Richardson entered his plea of guilty included his possession of oxycodone on April 11, 2013—the date of the search that is challenged in this § 1983 action. *Id.*, ECF No. 46; (Doc. 4 at 2, ¶ 1).[4]

## Discussion

### I.  Summary Judgment Standard

Pursuant to Federal Rule of Civil Procedure 56(a), a moving party is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When determining whether there is a genuine issue of material fact, the court is

---

[4] The court issued an Order (Doc. 12) on October 31, 2016 directing the parties to submit supplemental memoranda of law on the collateral estoppel doctrine, which neither party raised initially, to determine whether Richardson's claims also may be barred on this ground. The supplemental memoranda submitted by the parties (Docs. 13, 14) do not offer sufficient guidance in order for the court to address this issue. Accordingly, the court will not consider whether Defendants are also entitled to summary judgment on the basis of collateral estoppel.

5

"'required to resolve all ambiguities and draw all factual inferences in favor of the' nonmovant." *Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 44 (2d Cir. 2015) (quoting *Nationwide Life Ins. Co. v. Bankers Leasing Ass'n*, 182 F.3d 157, 160 (2d Cir. 1999)). If the moving party establishes that there are no genuine issues of material fact, the burden shifts to the nonmoving party, who must present "'significantly probative supporting evidence' of a disputed fact." *Hamlett v. Srivastava*, 496 F. Supp. 2d 325, 328 (S.D.N.Y. 2007) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). The party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." *Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d Cir. 2005) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

Because Richardson is proceeding *pro se*, the court "must interpret his papers liberally 'to raise the strongest arguments that they suggest.'" *Willey v. Kirkpatrick*, 801 F.3d 51, 62 (2d Cir. 2015) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)). *Pro se* litigants must nevertheless meet the "usual requirements of summary judgment, and a *pro se* party's bald assertions, unsupported by evidence, are insufficient to overcome a motion for summary judgment." *Crenshaw v. Herbert*, 445 F. Supp. 2d 301, 303 (W.D.N.Y. 2006) (quoting *Hernandez v. McGinnis*, 272 F. Supp. 2d 223, 226 (W.D.N.Y. 2003)); *see also Conroy v. N.Y. State Dep't of Corr. Servs.*, 333 F.3d 88, 94 (2d Cir. 2003) ("[M]ere conclusory allegations, speculation[,] or conjecture will not avail a party resisting summary judgment." (first alteration in original) (quoting *Cifarelli v. Village of Babylon*, 93 F.3d 47, 51 (2d Cir. 1996))).

## II.     Fourth Amendment Claims

Under 42 U.S.C. § 1983, a claimant may bring suit "against '[e]very person who, under color of any statute . . . of any State . . . subjects, or causes to be subjected, any citizen . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws . . . .'"[5] *Wyatt v. Cole*, 504 U.S. 158, 161 (1992) (alterations in original) (quoting 42 U.S.C. § 1983). A plaintiff bringing a § 1983 claim must establish that: "(1) the defendant acted under color of state law; and (2) as a result of the defendant's actions, the plaintiff suffered a denial of her federal statutory rights, or her constitutional rights or privileges." *Annis v. County of Westchester*, 136 F.3d 239, 245

---

[5] In *Monell v. Department of Social Services*, 436 U.S. 658 (1978), "the Supreme Court held that local government bodies are 'persons' who may be liable under § 1983." *Vasconcellos v. City of New York*, No. 12 Civ. 8445(CM), 2014 WL 4961441, at *11 (S.D.N.Y. Oct. 2, 2014) (citing *Monell*, 436 U.S. at 690)). To prove municipal liability under § 1983, a plaintiff must demonstrate both "that he suffered a tort in violation of federal law committed by the municipal actors and, in addition, that their commission of the tort resulted from a custom or policy of the municipality." *Askins v. Doe No. 1*, 727 F.3d 248, 253 (2d Cir. 2013). "In other words, a municipality may be liable under § 1983 only 'when execution of [its] policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy" causes injury." *Vasconcellos*, 2014 WL 4961441, at *11 (quoting *Monell*, 436 U.S. at 694). Though a plaintiff is not required to point to a specific policy, and "while courts may infer the existence of a policy based upon 'circumstantial proof,'" a single incident, particularly one occurring without the involvement of policy-making officials, "is insufficient to support an inference of a municipal custom or policy." *Russo v. Vermont*, Civil Action No. 1:10–cv–296, 2011 WL 4537956, at *7 (D. Vt. July 29, 2011) (quoting *Orkins v. Dumas*, No. 1:09–cv–00237–jgm, 2010 WL 4063167, at *2 (D. Vt. Oct. 15, 2010)); *see also DeCarlo v. Fry*, 141 F.3d 56, 61 (2d Cir. 1998). Regardless, the City of Rutland raises no issues regarding *Monell* liability here.

Richardson also names the RPD as a defendant. "[C]ourts have widely held that municipal police departments are not 'persons' within the meaning of Section 1983." *Russo*, 2011 WL 4537956, at *8 (citing *Carthew v. County of Suffolk,* 709 F. Supp. 2d 188, 195 (E.D.N.Y. 2010); *PBA Local No. 38 v. Woodbridge Police Dep't*, 832 F. Supp. 808, 825–26 (D.N.J. 1993) ("The numerous courts that have considered the question of whether a municipal police department is a proper defendant in a § 1983 action have unanimously reached the conclusion that it is not." (citations omitted))). As the Connecticut district court explained, "[a] municipal police department is a sub-unit or agency of the municipal government through which the municipality fulfills its policing function. Because a municipal police department is not an independent legal entity, it is not subject to suit under section 1983." *Nicholson v. Lenczewski*, 356 F. Supp. 2d 157, 164 (D. Conn. 2005); *see also Russo*, 2011 WL 4537956, at *8. But neither the City of Rutland nor the RPD have sought dismissal on this basis.

7

(2d Cir. 1998).  Section 1983 does not by itself create any substantive rights, but rather it establishes a procedure for plaintiffs to seek damages or injunctive relief for deprivation of their statutory or constitutional rights.  *Thompson v. Pallito*, 949 F. Supp. 2d 558, 569 (D. Vt. 2013).  Here, Richardson asserts that the initial strip search performed by Officer Souza violated his Fourth Amendment rights.  (Doc. 4 at 6, ¶ 1.)

      The Fourth Amendment, which applies to the states through the Due Process Clause of the Fourteenth Amendment, *see, e.g.*, *Mapp v. Ohio*, 367 U.S. 643, 655 (1961), guarantees the right "to be secure . . . against unreasonable searches and seizures."  U.S. Const. amend. IV.  Strip searches at correctional facilities are valid under the Fourth Amendment, so long as "the officer's decision to search [is] justified either by individualized reasonable suspicion or by a reasonable general policy."  *Fate v. Charles*, 24 F. Supp. 3d 337, 352 (S.D.N.Y. 2014); *see also Florence v. Bd. of Chosen Freeholders of Cty. of Burlington*, 132 S. Ct. 1510, 1517–23 (2012); *Hartline v. Gallo*, 546 F.3d 95, 100–01 (2d Cir. 2008).  These warrantless (and suspicionless) searches are justified by the "unique challenge of maintaining order in a 'crowded, unsanitary, and dangerous' jail."  *Fate*, 24 F. Supp. 3d at 348 (quoting *Florence*, 132 S. Ct. at 1521).

      However, the Supreme Court has not "rule[d] on the types of searches that would be reasonable in instances where . . . a detainee [is] held without assignment to the general jail population and without substantial contact with other detainees," as was the case for Richardson at the RPD.  *Florence*, 132 S. Ct. at 1522; *see also Fate*, 24 F. Supp. 3d at 349.  Courts in the Second Circuit have explicitly differentiated between routine strip searches of inmates at prisons and searches of individuals detained at police stations:

> A police station is not a jail. In the absence of a large, potentially dangerous, and ever-changing population of detainees, there is a less compelling law enforcement interest to balance against the extreme intrusion of a strip search. The justification for the broad scope of the search, and the higher burden of proof, dissipates almost entirely in an empty holding cell.

*Fate*, 24 F. Supp. 3d at 348; *see also Hartline*, 546 F.3d at 102 n.5 (explaining that the search of an arrestee in an empty cell, who was ultimately released, "present[ed] a markedly different set of circumstances than those . . . polices providing for routine strip searches in penal and other institutions housing large, dangerous, or vulnerable populations . . .").

Instead of the broad policies that may validate strip searches of the general population at prisons, a strip search of an arrestee at a police station must be supported by an officer's reasonable suspicion that the arrestee "is concealing weapons or other contraband[,] based on the crime charged, the particular characteristics of the arrestee, and/or the circumstances of the arrest." *Weber v. Dell*, 804 F.2d 796, 802 (2d Cir. 1986); *see also Hartline*, 546 F.3d at 100; *Fate*, 24 F. Supp. 3d at 346. Reasonable suspicion in this context is the same as the reasonable suspicion standard articulated by the Supreme Court in *Terry v. Ohio*, 392 U.S. 1, 21 (1968): "The officer must be able to justify the particular intrusion he makes—in other words, the fact that he chooses to conduct a strip or visual/manual body cavity search—based on 'specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion.'" *Fate*, 24 F. Supp. 3d at 346 (quoting *Terry*, 392 U.S. at 21). Reasonable suspicion is evaluated based on the "totality of the circumstances." *Sarnicola v. County*

*of Westchester*, 229 F. Supp. 2d 259, 271 (S.D.N.Y. 2002) (quoting *United States v. Arvizu*, 534 U.S. 266, 273 (2002)).  That is, the court must consider the facts allegedly giving rise to reasonable suspicion together, rather than viewing them "in isolation from each other." *Arvizu*, 534 U.S. at 274.

Factors supporting reasonable suspicion include an arrestee wearing "[l]oose-fitting or bulky clothing," acting in an unusual or evasive manner, and providing "contradictory answers to questions." *Sarnicola*, 229 F. Supp. 2d at 271 (citing *United States v. Asbury*, 586 F.2d 973, 976–77 (2d Cir. 1978)).  In the analogous *Terry* stop context, an individual's presence in a high crime area may also contribute to reasonable suspicion (though this factor, standing alone, is insufficient).  *Floyd v. City of New York*, 861 F. Supp. 2d 274, 288 (S.D.N.Y. 2012) (citing *Illinois v. Wardlow*, 528 U.S. 119, 124 (2000)).  Courts recognize that in making a reasonable suspicion determination, officers may rely on their personal "experience[s] and specialized training to make inferences from and deductions about the cumulative information available to [them]." *United States v. Muhammad*, 463 F.3d 115, 121 (2d Cir. 2006) (quoting *Arvizu*, 534 U.S. at 273).

Here, the parties contest whether Officer Souza's first search of Richardson even constituted a "strip search."  (*Compare* Doc. 4 at 3, ¶ 7 *and* Doc. 11 at 4, ¶ 12, *with* Doc. 9 at 5 *and* Doc. 9-2 (Souza Affidavit) at 1, ¶ 3(a).)  Construing the facts "in the light most favorable to" Richardson, the non-moving party, *Robinson*, 781 F.3d at 44 (quoting *Dillon v. Morano*, 497 F.3d 247, 251 (2d Cir. 2007), and interpreting his pleadings liberally in light of his *pro se* status, there is at least some evidence, however minimal, demonstrating that the initial search conducted by Officer Souza constituted a strip

10

search.  (*See* Doc. 9-2 at 1, ¶ 3(a) (Souza Affidavit, stating that Officer Souza conducted a "pat down search" of Richardson, after Richardson removed his top layer shirt); Doc. 9-5 at 3, ¶¶ 6–8 (same); Doc. 11-1 at 2, ¶ 3 (ATF "Report of Investigation," (ATF Report) stating that, "a more thorough search of [Richardson] was conducted by TFO Souza per Rutland Police Department policy").)  Therefore, for the purpose of ruling on Defendants' Motion, the court accepts that the initial search of Richardson on April 11, 2013 constituted a strip search.[6]  (*See* Doc. 4 at 3, ¶ 4; Doc. 9-1 at 2, ¶¶ 6–9; Doc. 9-2 at 1–2, ¶ 3(a)–(b); Doc. 11 at 4, ¶ 12; Doc. 11-1 at 2, ¶ 3.)

Under Second Circuit case law, as discussed above, Officer Souza was thus required to have reasonable suspicion that Richardson, a police station arrestee, was concealing contraband prior to executing the search.  Moreover, the reasonable suspicion

---

[6] Richardson also argues that the initial search "involved a degree of touching and/or probing" (Doc. 4 at 4), and occasionally characterizes the search as a "strip/manual cavity search" (Doc. 11 at 4, ¶ 12).  The court does not accept these vague and conclusory allegations.  *See Conroy*, 333 F.3d at 94 ("[M]ere conclusory allegations, speculation[,] or conjecture will not avail a party resisting summary judgment." (first alteration in original) (quoting *Cifarelli*, 93 F.3d at 51)).  Although a court is "required to resolve all ambiguities and draw all factual inferences in favor of the nonmovant" on a motion for summary judgment, "a plaintiff may not survive summary judgment merely by conjuring a hypothetical issue of material fact." *Robinson*, 781 F.3d at 44.  Rather, where the moving party demonstrates the absence of a genuine issue of material fact, "the opposing party must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Id.* (quoting *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011)).  The opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts, and may not rely on conclusory allegations or unsubstantiated speculation." *Id.* (quoting *Brown*, 654 F.3d at 358).  Here, in contrast to the allegation that he was subjected to a strip search, Richardson has not come forward with any evidence to support his allegation that he was subjected to a body cavity search.

In any event, the degree to which the strip search involved physical contact does not appear to impact the reasonable suspicion analysis.  *See, e.g.*, *Fate*, 24 F. Supp. 3d at 346 ("The officer must be able to justify the particular intrusion he makes—in other words, the fact that he chooses to conduct a *strip or visual/manual body cavity search*—based on 'specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion.'" (emphasis added) (quoting *Terry*, 392 U.S. at 21)).

standard applied even though Souza was acting pursuant to the RPD policy (Doc. 9-8), requiring officers to conduct a thorough search of all detainees.  *See Hartline*, 546 F.3d at 98, 100 (invalidating a strip search of an arrestee where officer did not have reasonable suspicion, despite the fact that the officer was acting "pursuant to the [police department's] policy of strip searching all arrested females").

Defendants argue that the strip search was valid under the Fourth Amendment because Officer Souza had reasonable suspicion that Richardson had contraband on his person.[7]  Defendants point to three primary factors establishing Officer Souza's reasonable suspicion: (1) Richardson provided a false identity to the police; (2) Richardson was wearing multiple layers of clothing; and (3) Richardson was "presen[t] in an apartment which was the subject of a search by an ATF taskforce with a federal warrant."  (Doc. 9 at 5.)  As discussed below, Richardson does not contest any of the facts supporting Officer Souza's reasonable suspicion, and thus there is no genuine issue of material fact in this case.  *See Robinson*, 781 F.3d at 44.

First, Defendants note that Richardson gave the police a false name.  (Doc. 9 at 5.)  The officers determined that Richardson had obtained a Vermont I.D. by using his

---

[7] While the court ultimately agrees with Defendants' claim that Officer Souza had reasonable suspicion to search Richardson, Defendants also advance an argument that is based on a flawed interpretation of the relevant case law.  Specifically, Defendants argue that Officer Souza's search was of the type that has "long passed constitutional muster," citing *Fate* for the proposition that a "full search of the person can take place upon the arrestee's arrival at a police station."  (Doc. 9 at 4 (citing *Fate*, 24 F. Supp. 3d at 344).)  This blanket assertion ignores the distinction between a strip search policy implemented for institutional order in the general population of a prison, and the strip search of an arrestee at a police station, which must be supported by reasonable suspicion, as discussed above.  *See Florence*, 132 S. Ct. at 1522–25; *Hartline*, 546 F.3d at 102 n.5; *Fate*, 24 F. Supp. 3d at 349 ("In the absence of the unique governmental interest in maintaining a jail, a reasonableness inquiry, rather than presumed deference to police officers, is the proper standard to apply.").

brother's identification information and subsequently cited Richardson with the misdemeanor offense of providing false information to law enforcement authorities. (*Id.* at 3 (citing Vt. Stat. Ann. tit. 13, § 1754).) Richardson admits these allegations. (*See* Doc. 4 at 2, ¶ 3; Doc. 11 at 1, ¶ 3 ("Plaintiff identified himself as Gerald Jourdain . . . ."); Doc. 11-1 at 1, ¶ 2(a).) In addition, Richardson has attached the ATF Report (Doc. 11-1) to his Affidavit, which states as follows: "[I]t would later be determined through [Richardson's] own admission and from fingerprints that [his] real identity was Devin [Richardson] . . . ." (*Id.* at 1, ¶ 2(a).) The ATF Report also indicates that Richardson continued to mislead officers, even after admitting his true identity, by providing a false date of birth and social security number. (*Id.*)

Second, Officer Souza observed that Richardson was wearing "numerous layers of clothing (multiple shirts, and underwear)." (Doc. 9-6 at 3, ¶ 9; *see also* Doc. 9-2 at 1, ¶ 3(a); Doc. 9-5 at 3, ¶ 6.) Officer Souza asked Richardson to remove his top shirt and determined that Richardson "actually had two pairs of underwear on." (Doc. 9-6 at 4, ¶ 10; *see* Doc. 9-2 at 1, ¶ 3(a); Doc. 9-5 at 2, ¶ 3.) Based on his training and experience, Officer Souza knew that "multiple layered clothing[,] particularly with pants and underwear[,] can provide space for hiding drugs" (Doc. 9-2 at 1–2, ¶ 3(b)), and that wearing multiple layers was consistent with the behavior of drug users and drug traffickers (Doc. 9-5 at 3, ¶ 8). Richardson does not address whether he was wearing multiple pairs of underwear, but admits that he was wearing two shirts. (*See* Doc. 11 at 4, ¶ 11.)

Finally, Defendants point to Richardson's presence "at a location in Rutland w[h]ere a federal search warrant for drugs was executed," as another factor contributing to Officer Souza's reasonable suspicion that Richardson had drugs on his person. (Doc. 9-2 at 2, ¶ 3(c).)  While presence in an area of criminal activity, alone, is insufficient to establish reasonable suspicion, *see Wardlow*, 528 U.S. at 124, this factor, in conjunction with the fact that Richardson provided police with a false identification and was wearing multiple layers of clothing, is sufficient to support Officer Souza's reasonable suspicion that Richardson was carrying contraband.  Notably, Richardson does not contest his presence at the Rutland location that was the subject of the federal search warrant.  (*See* Doc. 4 at 2, ¶ 1; Doc. 11 at 1, ¶¶ 1–2.)  He instead argues that his "name was not mentioned on the [ATF] search warrant [for the location in Rutland] or in the [applicable] search warrant affidavit."  (Doc. 11 at 1, ¶ 3.)  Officer Souza, however, did not rely on the search warrant itself to establish his reasonable suspicion; rather, he relied on the fact that Richardson resided at a location that was the subject of a federal drug investigation. (Doc. 9-2 at 2; *see also* Doc. 11-1 at 2, ¶ 2(c).)  Considering these factors in the totality of the circumstances, Defendants have demonstrated that there is no genuine dispute of material fact with respect to Officer Souza's reasonable suspicion to justify his search of Richardson.

Richardson's conclusory allegations in response to Defendants' Motion are insufficient to survive summary judgment.  As discussed above, if the moving party has met its burden, the party opposing summary judgment must "come forward with evidence that would be sufficient to support a jury verdict in its favor."  *Burt Rigid Box, Inc. v.*

14

*Travelers Prop. Cas. Corp.*, 302 F.3d 83, 91 (2d Cir. 2002).  The nonmoving party "cannot defeat summary judgment by relying on the allegations in his complaint, conclusory statements, or mere assertions that affidavits supporting the motion are not credible."  *Hamlett*, 496 F. Supp. 2d at 328 (citing *Gottlieb v. County of Orange*, 84 F.3d 511, 518 (2d Cir. 1996); *see also Dasher v. N.Y.C. Police Dep't*, No. 94 CV 3847(SJ), 1999 WL 184118, at *1 (E.D.N.Y. Mar. 18, 1999) ("[T]he court should grant summary judgment where the nonmoving party's evidence is merely colorable, conclusory, speculative, or not significantly probative.").

Richardson's Affidavit (Doc. 11) is conclusory and "not significantly probative." *Dasher*, 1999 WL 184118, at *1.  The Affidavit primarily repeats the allegations contained in the Complaint, such as the claim that Officer Souza "grabbed [Richardson's] groin area" (Doc. 11 at 2, ¶ 7; *compare with* Doc. 4 at 2, ¶ 4), but provides no evidence to support them, nor an explanation as to how these allegations, even if true, constitute violations of Richardson's Fourth Amendment rights.  Many of Richardson's claims are bald legal assertions such as, "[a]t this point[,] law enforcement[] did not have probable cause to arrest Plaintiff."  (Doc. 11 at 2, ¶ 5.)  The only substantial factual argument made by Richardson is that he was "dressed [in] only a thin [t]-shirt and [tank top]" at the time of the search, and that this clothing "can hardly be considered so numerous in layers[] as to render a pat frisk ineffective."  (*Id.* at 4, ¶ 11.)  In support of this assertion, however, Richardson submits merely a darkened photograph that reveals virtually nothing about his clothing at the time of the search.  (*See id.*; Doc. 11-1 at 3.)  In any event, whether a pat frisk would have been effective is irrelevant to the reasonable suspicion analysis.

With the exception of Richardson's immaterial claims about the search warrant and his clothing, Richardson does not offer any evidence or facts to undermine Officer Souza's reasonable suspicion. In fact, many statements in Richardson's Affidavit, and the ATF Report attached thereto, actually lend additional support to Officer Souza's reasonable suspicion that Richardson had contraband on his person. (*See* Doc. 11 at 1, ¶ 2 (Richardson noting in Affidavit that the search warrant for a Rutland residence where he was sleeping "was issued on the strength of an informant's purchase of drugs from an individual . . . at th[at] residence"); *id.* ¶ 3 (Richardson indicating in Affidavit that "[he] identified himself as Gerald Jourdain"); *id.* at 2, ¶ 5 (Richardson stating in Affidavit: "After questioning [him] for close to two . . . hours, he admitted to his true identity as being Devin Richardson."); Doc 11-1 at 2, ¶ 2(c) (ATF Report indicating that Richardson "said that he had just moved" to the address that was the subject of the ATF search and that "it was his apartment"); *id.* ¶ 2(e) (ATF Report documenting that Richardson informed officers that "he originally came to Vermont to sell narcotics, but that he had since stopped selling and that he now only sold marijuana").) Furthermore, as mentioned above, Richardson did not submit a Statement of Disputed Facts, as required by Local Rule 56(b), which underscores that the material facts are undisputed. Richardson has thus failed to establish any genuine issues of disputed material fact, and Defendants are entitled to summary judgment as a matter of law with respect to Richardson's Fourth Amendment claims.

Accordingly, I recommend that the court GRANT summary judgment in favor of Defendants and DISMISS Richardson's Complaint (Doc. 4), without leave to amend.

"[L]eave to amend a complaint need not be granted when amendment would be futile." *Ellis v. Chao*, 336 F.3d 114, 127 (2d Cir. 2003); *see also Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (holding that a "futile request to replead," even by a *pro se* litigant, "should be denied").  Amendment is futile when the cause of action is substantively flawed and better pleading will not cure the complaint's defects.  *Cuoco*, 222 F.3d at 112; *see also Health-Chem Corp. v. Baker*, 915 F.2d 805, 810 (2d Cir. 1990).  Applied here, amendment would be futile because Richardson's Fourth Amendment claims fail in substance, for the reasons explained above.  I therefore recommend that the court decline to grant Richardson leave to amend his Complaint.

## **Conclusion**

For these reasons, I recommend that the court GRANT Defendants' Motion for Summary Judgment (Doc. 9) on the ground that the strip search was justified by reasonable suspicion and DISMISS Richardson's Complaint (Doc. 4) in its entirety.

Dated at Burlington, in the District of Vermont, this 15th of December, 2016.

/s/ John M. Conroy
John M. Conroy
United States Magistrate Judge

Any party may object to this Report and Recommendation within 14 days after service thereof, by filing with the Clerk of the Court and serving on the Magistrate Judge and all parties, written objections which shall specifically identify those portions of the Report and Recommendation to which objection is made and the basis for such objections.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b)(2); L.R. 72(c).  Failure to timely file such objections "operates as a waiver of any further judicial review of the magistrate's decision."  *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989).