Case 2:16-cv-00055-cr-jmc   Document 17   Filed 03/08/17   Page 1 of 10

U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2017 MAR -8  PM 4: 28

CLERK
BY ~~~~~
DEPUTY CLERK

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

| | |
|---|---|
| DEVIN RICHARDSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 2:16-cv-55 |
| ) | |
| CITY OF RUTLAND, CITY OF RUTLAND ) | |
| POLICE DEPARTMENT, and ) | |
| OFFICER JUSTIN D. SOUZA, ) | |
| ) | |
| Defendants. ) | |

**OPINION AND ORDER ADOPTING MAGISTRATE JUDGE'S
REPORT AND RECOMMENDATION**
(Docs. 15 & 9)

This matter came before the court for a *de novo* review of the Magistrate Judge's December 15, 2016 Report and Recommendation ("R & R") (Doc. 15). The Magistrate Judge recommended that the court grant the motion for summary judgment filed by Defendants City of Rutland, City of Rutland Police Department, and Rutland Police Officer Justin D. Souza (collectively, "Defendants") (Docs. 9). Plaintiff Devin Richardson timely objected to the R & R although he did not cite any grounds for his objection. *See* Doc. 16 at 1 (stating that Plaintiff "does hereby object to the U.S. Magistrate Judge['s] . . . [R]eport and [R]ecommendation in its entirety").

Plaintiff is self-represented. Defendants are represented by Kaveh S. Shahi, Esq.

I. **Factual Background.**[1]

On April 11, 2013, officers from the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") conducted a search of a residence in Rutland, Vermont pursuant to a search warrant that was based on information from a confidential informant ("CI"). The CI claimed to have purchased drugs from Joshua Minix at the residence on April 2, 2013. Plaintiff was not named in the search warrant or the supporting affidavit. However, prior to the execution of the search warrant, law enforcement had knowledge that Plaintiff used the alias Gerald Jourdain.

Plaintiff was asleep when law enforcement entered. Plaintiff initially identified himself as Gerald Jourdain. Officers handcuffed, dressed, and frisked Plaintiff, removed him from the residence, and placed him in a cruiser while officers finished the search. The officers then transported Plaintiff to the Rutland Police Department to investigate his identity and determine his potential involvement in the Minix investigation. Upon arriving at the station, officers again frisked Plaintiff.

Officers questioned Plaintiff for approximately two hours, during which time Plaintiff admitted his actual identity. The officers also learned that Plaintiff had obtained a fraudulent Vermont identification using his brother's information. Plaintiff was charged with a misdemeanor count of providing a false report to an officer. Officers fingerprinted and photographed Plaintiff in order to positively identify him, and they brought him to an empty holding cell while awaiting confirmation of his identity.

Pursuant the Rutland Police Department's policy, officers must conduct a "thorough" search of detainees, including all items of clothing where weapons or contraband may be hidden. (Doc. 9-1 at 2.) Officer Souza and an ATF agent entered the holding cell, and Officer Souza conducted a pat down search of Plaintiff. At the time of

---

[1] The court derives the following facts from Defendants' Rule 56 statement of material facts, Plaintiff's Complaint, and Plaintiff's affidavits dated September 15, 2016 and November 17, 2016. Plaintiff did not file a Rule 56(c) statement of disputed material facts and is thus deemed to have admitted the facts set forth in Defendants' statement of undisputed facts. *See* Fed. R. Civ. P. 56(e)(2) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may[] . . . consider the fact undisputed for purposes of the motion").

2

his detainment, Plaintiff was wearing multiple layers of clothing. Based on his training and experience, Officer Souza had knowledge that contraband may be hidden in multiple layers of clothing.

Officer Souza requested that Plaintiff remove his top shirt and belt, and Plaintiff complied. Officer Souza then observed that Plaintiff was wearing two pairs of underwear. Officer Souza frisked Plaintiff's underwear and felt an object. Plaintiff contends that Officer Souza "grabbed [his] groin area" once he was undressed "down to his underwear[.]" (Doc. 4 at 3, ¶ 4.) Plaintiff resisted the search and engaged in a physical struggle with the officers, which led to his being restrained. Plaintiff then voluntarily produced a small plastic bag of pills from his underwear.

The officers applied for and obtained a warrant for a strip search based on Officer Souza's belief that Plaintiff was hiding a larger bag of contraband in his underwear based on the size of the object Officer Souza felt during the previous pat down. The strip search of Plaintiff did not reveal any further contraband.[2] Plaintiff's misdemeanor charge of false report to a police officer was subsequently dismissed.

Officers received confirmation of Plaintiff's identity and learned that Plaintiff had an outstanding New York warrant for violating his parole. Plaintiff was transported to Marble Valley Regional Correctional Center in Rutland. On April 12, 2013, officers at Marble Valley Regional Correctional Center searched Plaintiff and discovered oxycodone.

Plaintiff contends that he was "never charged for any contraband discovered during the first strip search, which was conducted without a warrant" on April 11, 2013. *Id.* at ¶ 7. On May 6, 2015, Plaintiff pled guilty to one count of conspiring to distribute oxycodone and heroin from the summer of 2012 through April 11 and 12, 2013.[3] On

---

[2] Officers found a clear bag on the floor of the room in which Plaintiff was held, which was not present when Officer Souza applied for a search warrant. A brown substance which Officer Souza suspected was feces was observed on the outside of the bag.

[3] The court takes judicial notice of the docket sheet and documents in Plaintiff's underlying criminal case, *United States v. Richardson*, 5:14-cr-45. *See* Fed. R. Evid. 201(b) (requiring that judicially noticed fact must be one that "is not subject to reasonable dispute because it: (1) is

3

August 25, 2015, Plaintiff was sentenced to a term of forty-eight months of imprisonment, followed by a three year term of supervised release.

## II. Procedural Background.

On March 2, 2016, Plaintiff filed a Complaint pursuant to 42 U.S.C. § 1983, alleging that Defendants violated his rights under the Fourth and Fourteenth Amendments by subjecting him to a strip search without reasonable cause. Plaintiff further alleges that the City of Rutland and the Rutland Police Department had "de facto policies" and practices in place which resulted in a failure to properly train, screen, supervise, or discipline employees and police officers. (Doc. 4 at 5.) Plaintiff seeks compensatory and punitive damages and costs in the amount of $500,000.

On August 15, 2016, Defendants filed their motion for summary judgment. In response, on September 15, 2016, Plaintiff filed an affidavit and attached a copy of the three page ATF report on the April 11, 2013 investigation of Plaintiff. At the end of October 2016, the Magistrate Judge ordered the parties to submit supplemental memoranda of law regarding the collateral estoppel doctrine and its potential application to Plaintiff's case. On November 11, 2016, Plaintiff submitted a letter to the court in which he argued collateral estoppel should not bar his case in part because "the oxycodone that was the basis of Plaintiff's [f]ederal conviction[] was discovered at the Marble Valley Regional Correctional Facility by corrections officer[s] on April 12, 2013, under a different set of circumstances." (Doc. 13 at 2.) On November 21, 2016, Defendants responded that, as a result of his guilty plea, Plaintiff forfeited the right to challenge the legality of the police encounters which led to the recovery of the narcotics on April 11, 2013.

On December 15, 2016, the Magistrate Judge issued an R & R recommending that Defendants' motion for summary judgment be granted. On January 6, 2017, Plaintiff objected to the R & R. Defendants have not filed a response.

---

generally known . . . or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned"). On March 1, 2017, the Second Circuit issued a mandate denying Plaintiff's motion for leave to file a successive 28 U.S.C. § 2255 motion. *See* Doc. 87.

4

### III. Conclusions of Law and Analysis.

#### A. Standard of Review.

A district court judge must make a *de novo* determination of those portions of a magistrate judge's report and recommendation to which an objection is made. Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1); *Cullen v. United States*, 194 F.3d 401, 405 (2d Cir. 1999). The district judge may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1); *accord Cullen*, 194 F.3d at 405. A district judge, however, is not required to review the factual or legal conclusions of the magistrate judge as to those portions of a report and recommendation to which no objections are addressed. *Thomas v. Arn*, 474 U.S. 140, 150 (1985).

Rule 72(b) requires a party to provide "specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2); *see Mario v. P & C Mkts., Inc.*, 313 F.3d 758, 766 (2d Cir. 2002) (concluding a "bare statement, devoid of any reference to specific findings or recommendations to which he objected and why, and unsupported by legal authority . . . does not constitute an adequate objection under . . . Fed. R. Civ. P. 72(b)"). In this case, Plaintiff's objection provides no guidance to the court regarding why he contends the R & R is in error. He has thus arguably waived his right to object. In light of his self-represented status, the court will nonetheless review the R & R for erroneous factual and legal conclusions.

Summary judgment must be granted when the record shows there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "A fact is 'material' . . . when it 'might affect the outcome of the suit under the governing law[,]'" and "[a]n issue of fact is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "If, as to the issue on which summary judgment is sought, there is any evidence in the record from which a reasonable inference could be drawn in favor of the opposing party, summary judgment is improper." *Sec. Ins. Co. of*

5

*Hartford v. Old Dominion Freight Line Inc.*, 391 F.3d 77, 82-83 (2d Cir. 2004) (internal quotation marks omitted).

The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted). "When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . . [Rather], the nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (citations, emphasis, footnote, and internal quotation marks omitted).

"The trial court's function in deciding such a motion is not to weigh the evidence or resolve issues of fact, but to decide instead whether, after resolving all ambiguities and drawing all inferences in favor of the non-moving party, a rational juror could find in favor of that party." *Pinto v. Allstate Ins. Co.*, 221 F.3d 394, 398 (2d Cir. 2000); *see also McClellan v. Smith*, 439 F.3d 137, 148 (2d Cir. 2006) ("'Resolutions of credibility conflicts and choices between conflicting versions of the facts are matters for the jury, not for the court on summary judgment.'") (quoting *United States v. Rem*, 38 F.3d 634, 644 (2d Cir. 1994)).

Because Plaintiff is self-represented, the court must construe his filings "liberally and interpret[] [them] to raise the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (emphasis and internal quotation marks omitted). Although the court ordinarily grants a self-represented litigant leave to amend, it need not do so when the claims are futile. *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) ("The problem with [the self-represented plaintiff's] causes of action is substantive; better pleading will not cure it. Repleading would thus be futile. Such a futile request to replead should be denied.").

6

## B. Whether the Magistrate Judge Correctly Concluded that the Strip Search did not Violate Plaintiff's Fourth Amendment Rights.

In order to prevail on a claim brought under 42 U.S.C. § 1983, Plaintiff must establish (1) actions taken under color of law; (2) a deprivation of a constitutional or statutory right; (3) causation; and (4) damages. *See Roe v. City of Waterbury*, 542 F.3d 31, 36 (2d Cir. 2008); *Hollander v. Copacabana Nightclub*, 624 F.3d 30, 33 (2d Cir. 2010). Plaintiff alleges that Officer Souza's strip search violated his Fourth Amendment rights because Officer Souza did not have reasonable suspicion that he possessed contraband.[4]

Under the Fourth Amendment, officers must possess "an individualized reasonable suspicion that [a misdemeanor] arrestee is concealing weapons or other contraband based on the crime charged, the particular characteristics of the arrestee, and/or the circumstances of the arrest before []he may be lawfully subjected to a strip search." *Hartline v. Gallo*, 546 F.3d 95, 100 (2d Cir. 2008) (internal quotation marks omitted); *see also N.G. v. Connecticut*, 382 F.3d 225, 232 (2d Cir. 2004) (observing that all circuits to consider the issue have reached a similar conclusion). "A reasonable suspicion of wrongdoing is something stronger than a mere hunch, but something weaker than probable cause." *Varrone v. Bilotti*, 123 F.3d 75, 79 (2d Cir. 1997) (internal quotation marks omitted). "To establish reasonable suspicion, [officers] must point to specific objective facts and rational inferences that they are entitled to draw from those facts in light of their experience." *Id.* (internal quotation marks omitted). Reasonable suspicion

---

[4] The parties dispute whether Officer Souza's initial search of Plaintiff at the Rutland Police Department constituted a strip search. *Compare* Doc. 4 at 4 ("By subjecting Plaintiff, a misdemeanor arrestee, to a strip search without reasonable cause at the [Rutland Police Department], the individual [D]efendants[] . . . violated Plaintiff's civil rights"), *with* Doc. 9 at 5 ("the initial search of the [P]laintiff was not a strip search"). The Supreme Court has recognized that a search of a suspect consists of "a careful exploration of the outer surfaces of a person's clothing all over his or her body" including "arms and armpits, waistline and back, the groin area about the testicles, and entire surface of the legs down to the feet." *Terry v. Ohio*, 392 U.S. 1, 16, 17 n.13 (1968) (internal quotation marks omitted). Construing the evidence in the light most favorable to Plaintiff, however, the court assumes for purposes of this motion that Officer Souza's initial search of Plaintiff constituted a strip search.

7

is evaluated based upon the "totality of the circumstances[,]" rather than viewing them "in isolation from each other[.]" *United States v. Arvizu*, 534 U.S. 266, 273-74 (2002).

In this case, Officer Souza had reasonable suspicion that Plaintiff possessed contraband at the time of the initial search at the Rutland Police Department. Officers first encountered Plaintiff while he was asleep in a residence that was being searched based on suspicion of drug trafficking. *See generally Elk v. Townson*, 839 F. Supp. 1047, 1052 (S.D.N.Y. 1993) (holding plaintiff's "presence in a vehicle which smelled strongly of marijuana and in which marijuana was found both on another occupant and in a container located near him gave the Sheriff's Office reasonable grounds to suspect that [plaintiff] might be hiding drugs on his person"). Although Plaintiff's name did not appear in the search warrant, law enforcement officers had knowledge that Plaintiff used an alias before they executed the search warrant, and Plaintiff did, in fact, utilize his alias when questioned. Moreover, officers subsequently learned that Plaintiff fraudulently obtained a Vermont identification card by using his brother's information. *See United States v. Asbury*, 586 F.2d 973, 976-77 (2d Cir. 1978) (listing factors for court to consider when determining reasonableness, including "[e]vasive or contradictory answers"). In addition, Plaintiff was wearing multiple layers of underwear, and based on his training and experience, Officer Souza had knowledge that drugs or weapons may be hidden under numerous layers of clothing. *See id.* (identifying "[l]oose-fitting or bulky clothing" as a factor supporting reasonable suspicion).

As the Magistrate Judge correctly noted, Plaintiff did not contest any of the fact supporting Officer Souza's reasonable suspicion. To the contrary, many of the statements in Plaintiff's affidavit and the ATF report attached thereto support Officer Souza's reasonable suspicion that Plaintiff possessed hidden contraband. *See* Doc. 11 at 1 (noting the "search warrant was issued on the strength of an informant's purchase of drugs . . . at [the] residence"); *id.* ("Plaintiff identified himself as Gerald Jourdain"); *id.* at

2 (stating that, after two hours of questioning, Plaintiff "admitted to his true identity as being Devin Richardson").[5]

Because Officer Souza had reasonable suspicion that Plaintiff possessed concealed contraband, Plaintiff cannot establish his § 1983 claim against Officer Souza as no constitutional violation occurred. Accordingly, the court GRANTS Defendants' motion for summary judgment with respect to Plaintiff's claim against Officer Souza.

In order to establish the City of Rutland's liability, Plaintiff must demonstrate that he "suffered a tort in violation of federal law committed by the municipal actors and, in addition, that their commission of the tort resulted from a custom or policy of the municipality." *Askins v. Doe No. 1*, 727 F.3d 248, 253 (2d Cir. 2013) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-91 (1978)). Under federal law, "a municipality cannot be liable for inadequate training or supervision when the officers involved . . . did not violate the plaintiff's constitutional rights." *Curley v. Vill. of Suffern*, 268 F.3d 65, 71 (2d Cir. 2001). Because the court has determined that Officer Souza did not violate Plaintiff's Fourth Amendment rights, Plaintiff's derivative claims against the City of Rutland must also be dismissed. Plaintiff's claims against the Rutland Police Department fail for the additional reason that municipal police departments are not "persons" within the meaning of § 1983. *See Carthew v. Cty. of Suffolk*, 709 F. Supp. 2d 188, 195 (E.D.N.Y. 2010) ("It is well settled that an entity such as the Suffolk County Police Department is an 'administrative arm' of the same municipal entity as Suffolk County and thus lacks the capacity to be sued."). The court thus GRANTS Defendants' motion for summary judgment with respect to Plaintiff's claims against the City of Rutland and the Rutland Police Department.

---

[5] *See also* Doc. 11-1 at 2 (recounting in ATF report that Plaintiff stated "he had just moved" to the searched residence and that "it was his apartment and that the money found in a sock, believed by him to be just over $4,000.00, in the bedroom where he was sleeping belonged to him"); *id.* (stating Plaintiff "said that he originally came to Vermont to sell narcotics, but that he had since stopped selling and that he now only sold marijuana").

## CONCLUSION

For the foregoing reasons, the court hereby ADOPTS the Magistrate Judge's R & R in its entirety (Doc. 15) and GRANTS Defendants' motion for summary judgment (Doc. 9).

Dated at Burlington, in the District of Vermont, this 8th day of March, 2017.

Christina Reiss, Chief Judge
United States District Court